1  Jon H. Freis, Esq. [CSB # 204708]
2  LAW OFFICES OF JON H. FREIS
   120 El Camino Drive, Suite 204
3  Beverly Hills, CA 90212
   Telephone: (310) 276-1218
4  Facsimile: (310) 276-1961
   e-mail: jon@jhflaw.net
5
6  Attorneys for Plaintiff
   MARY WILLIA
7

8                      UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA

10

11  MARY WILLIA,                         CV11 05178 RGK MRWx
12              Plaintiff,                NO.
13        v.                             COMPLAINT FOR DAMAGES FOR:
14  MARK KAPLAN, an individual; LES      1. Negligence
15  BRONTE, an individual; TIKVA         2. Breach of Fiduciary Duty
    NEMANI, an individual; DAVID         3. Civil Conspiracy
16  KASPER, an individual; and DOES 1-10,4. Fraud
    Inclusive                            5. Damages for Violation of 18 U.S.C. §
17                                          153
18              Defendants.              6. Damages for Violation of 18 U.S.C. §
                                            157
19                                       7. Damages for Violation of 11 U.S.C. §
                                            1102
20                                       8. Damages for Violation of 18 U.S.C. §
21                                          1962(c) ("Civil RICO")

22

23              **PARTIES, JURISDICTION AND VENUE**

24       1.   Plaintiff Mary Willia is an individual person residing in Los Angeles County,
25  California.
26

COMPLAINT FOR DAMAGES - 1

2. Defendant MARK KAPLAN is an individual person residing in Atlanta, Georgia. KAPLAN is a member of the Post-Confirmation Creditor's Committee ("PCC") established under the First Amended Plan of Reorganization (the "Plan of Reorganization") confirmed on April 16, 2010 in the Bankruptcy case of <u>In Re Lawrence Kates</u> filed in the United States Bankruptcy Court for the Western District of Washington on January 12, 2009. In his capacity as a committee member, KAPLAN has attended, in person and by telephone, committee meetings which took place in Los Angeles, California, which is where many of the other PCC members reside and where the PCC substantially conducts its affairs.

3. Defendant LES BRONTE is an individual person residing in Los Angeles County, California and is also a member of the PCC.

4. Defendant TIKVA NEMANI is an individual person residing in Los Angeles County, California and is also a member of the PCC.

5. Defendant DAVID KASPER is an individual person residing in Los Angeles County, California and is also a member of the PCC.

6. That the true names or capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiff as herein alleged.

7. That at all times herein mentioned, each of the Defendants was the co-conspirator, agent, partner, and employee of each of the remaining Defendants, and was at all

COMPLAINT FOR DAMAGES - 2

times acting within the purpose and scope of said conspiracy, agency and employment, and each Defendant has ratified and approved the acts of the remaining Defendants.

8. Jurisdiction is proper under 28 U.S.C. § 1331.

## OVERVIEW

9. The members of bankruptcy creditor committees owe fiduciary duties of loyalty and care to the bankruptcy estate and their creditor constituency. By statute and as a matter of federal common law, creditors committee members hold a trust relationship with property of the bankruptcy estate. The trust relationship prohibits committee members, acting individually or through the committee, from directly or indirectly purchasing estate assets, or manipulating asset values in order to enable selected parties to profit from committee actions and nonpublic information obtained in trust as a result of committee membership. As detailed below, the Defendants conducted the creditors committee through a pattern of racketeering activity directed at acquiring assets from the bankruptcy estate for personal gain. In so doing, the Defendants deliberately and maliciously breached duties owed to Plaintiff and all other unsecured creditors of the Chapter 11 Bankruptcy Estate of Lawrence Kates. Acting in concert with other committee members and third parties taking advantage of the fiduciaries' breach, the Defendants starved the Bankruptcy Estate's patent assets of resources necessary to maximize their value – violating duties of care. The Defendants' objective was to drive down the value of the patent assets and then directly or indirectly purchase them from the Bankruptcy Estate – amounting to fraud and violation of the duty of loyalty. In pursuit of this objective, Defendants conspired to employ the PCC as an enterprise for the purpose of engaging in, concealing, and benefitting from common law fraud, bankruptcy fraud, mail

COMPLAINT FOR DAMAGES - 3

fraud, and embezzlement against the Estate. If Defendants had not manipulated the PCC and administration of the patent assets, then the Bankruptcy Estate's recovery would have been sufficient to pay all unsecured creditors in full. In this lawsuit, Plaintiff seeks to recover on behalf of the Estate damages caused by Defendants' oppressive, fraudulent and malicious conduct.

## FACTUAL BACKGROUND

10. Lawrence Kates ("Debtor") filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington on January 12, 2009. The Debtor's First Amended Plan of Reorganization (the "Plan of Reorganization") was confirmed on April 16, 2010.

11. The Plan of Reorganization appoints The Stapleton Group as Plan Administrator of Debtor's Bankruptcy Estate (the "Estate"), charged with the responsibility of liquidating Estate assets consisting of, among other assets, fifty eight (58) U.S. patents, thirty three (33) currently pending U.S. patent applications, and over one hundred and fifty (150) foreign patents and trademark applications. The Estate patent assets were created by the Debtor. Prior to the bankruptcy, several of the patents were also developed by the Debtor into products for sale with marketing materials and parts and equipment inventories.

12. The Plan of Reorganization also establishes a Post Confirmation Committee ("PCC") to represent the interests of unsecured creditors following confirmation and during liquidation of the Bankruptcy Estate. The Defendants were members of the Unsecured Creditors Committee prior to confirmation of the Plan of Reorganization. The Defendants actively sought and maintained committee membership both before and after confirmation of the Plan of Reorganization.

13. Under the Plan of Reorganization, which the PCC and Defendants played an active role in preparing and negotiating, PCC consultation and/or approval is required prior to a host of Estate administration activities. Such activities include, without limitation, establishing sales prices and listing terms for Estate assets, and their ultimate sale or abandonment. The Plan of Reorganization expressly required that The Stapleton Group and PCC set prices and listing terms "in such a way as to maximize the ultimate return to the Estate."

14. The Plan of Reorganization also states specifically that the PCC "shall not control [The Stapleton Group]." The Stapleton Group is instead obligated to act independently from the PCC and in accordance with its own business judgment and fiduciary duties of undivided loyalty and care. During the course of liquidation, however, due in part to Defendant's conduct and scheme as set forth herein, The Stapleton Group and the PCC permitted an inappropriate expansion of PCC authority to propose and approve the timing of asset sales, asset marketing strategies, and the allocation of Estate resources for the maintenance and preservation of Estate asset values.

15. Such expansion of PCC authority violates the Plan of Reorganization, and provides an opportunity for the PCC and its members, including the Defendants, to manipulate the value of, and markets for, Estate assets for the benefit of themselves and related third parties.

16. Each Defendant, by virtue of PCC membership, is a fiduciary and cannot directly or indirectly purchase Estate property or assist others in doing so.

17. Despite the position of trust, the PCC and its members, including Defendants, were advised and therefore believe that their acquisition of Estate assets would be permitted.

On information and belief, Defendant relied on said advice in engaging in the conduct set forth herein.

18.  Plaintiff is informed and believes, and on that basis alleges, that during the fall of 2010, Defendants, acting alone or in concert with other PCC members and unrelated third parties, clandestinely organized a group of approximately fifty (50) unsecured creditors, referred to as the "Oversight Committee." Defendants routinely disclosed material information concerning Estate administration, which Defendant(s) obtained in the capacity as a fiduciary on the PCC, to the Oversight Committee in order to achieve outcomes otherwise unavailable based solely on Defendant's status as a member of the PCC.

19.  The Plaintiff is further informed and believes, and on that basis alleges, the purpose of the Oversight Committee was to lobby The Stapleton Group and PCC in order to influence decisions concerning administration of Estate assets for the benefit of the Defendants, other PCC members or related third parties.

20.  Plaintiff is further informed and believes, and on that basis alleges, that acting alone or in concert with other PCC members, and at times through the Oversight Committee, Defendants manipulated the Estate's administration of the patent assets for the benefit of the Defendants or related third parties.

21.  Specifically, the Defendants, in concert with other PCC members or third parties, opposed and prevented investment of Estate resources necessary to maximize patent asset values and promoted payment of Estate funds to professionals in amounts exceeding those allowed under the Plan of Reorganization, while advocating delayed administration of the patent assets, until such time as Estate funds were insufficient to maximize patent asset values. Defendants only then supported sale of the patent assets, with sales prices and listing

COMPLAINT FOR DAMAGES - 6

terms designed to minimize the ultimate return to the Estate and to maximize the return of Defendant, other PCC members and third parties following acquisition from the Estate.

22.     Defendants, acting individually and through the Oversight Committee, consistently labeled the patents as "worthless," and insisted the Debtor, who invented the patent assets, have no involvement in their administration.  Defendants' objective was to discourage investment in the patents and prevent the Debtor from seeking to maximize their value for the Estate.

23.     Defendants were also motivated to seek revenge against the Debtor, rather than maximize the ultimate return to the Estate.

24.     On at least one occasion Defendants, acting surreptitiously through third parties, presented offers to purchase selected patent assets from the Estate.  Defendants, acting individually and through the Oversight Committee, sought to conceal the identity of the bidder and the offer price.  When other PCC members and unsecured creditors sought such information from The Stapleton Group, the Defendants opposed the request.

25.     Defendants took other measures to conceal its tactics and protect and achieve its objective of manipulating and acquiring Estate assets and preventing disclosure of conduct outside the PCC.  Defendants advocated the PCC refuse information requests by its creditor constituency, including all requests for information concerning administration of the patent assets, and a request that PCC members admit or deny their involvement in acquiring Estate assets.  In other instances, Defendants, acting in concert with other PCC members, voted to remove Plaintiff from the PCC in retaliation for Plaintiff's complaints about the secrecy, impropriety, lack of transparency, and behavior that obstructed PCC fiduciary responsibilities in the PCC's dealings with the Estate assets.  Defendants threatened removal of other PCC

members as well for lack of cooperation in his scheme to acquire Estate assets and retaliated against unsupportive PCC members by promoting challenges to their creditors claims and those of their relatives and affiliates. Further, failing PCC cooperation, Defendants threatened to seek appointment of a trustee or convert the Bankruptcy to one under Chapter 7 in order to negatively impact recovery for all.

26. Despite Defendants' use of threats and fear to intimidate the Plaintiff and the PCC members, certain PCC members openly accused Defendants, both orally and in writing, of attempting to appropriate Estate patent assets.

27. Defendant conspired to employ the PCC as an enterprise for the purpose of engaging in, concealing, and benefitting from common law fraud, bankruptcy fraud, and embezzlement against the Estate, in order to devalue Estate assets by starving them of necessary resources, in order to acquire them. Such conduct has the result of reducing recovery of all Estate creditors, including Plaintiff.

### First Cause of Action – Negligence

28. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

29. Defendants, in concert with each other, owed common law duties of care to the Estate and all unsecured creditors, including Plaintiff.

30. Defendants, acting alone and in concert with other PCC members, breached these duties by, among other things, failing to exercise appropriate business judgment on behalf of Plaintiff and the Estate, and instead, acting in a manner reasonably calculated to reduce, rather than maximize, the ultimate return to the Estate.

31. As a direct and proximate result of the Defendants' negligence, Plaintiff and the Estate have been damaged in an amount to be proven at trial, which amount includes, but is not limited to, the difference between the sum of allowed unsecured claims against the Estate, or alternatively the amount of Plaintiff's allowed unsecured claim, less actual, pro rata distributions paid by the Estate, plus interest and other consequential, incidental and punitive damages.

### Second Cause of Action – Breach of Fiduciary Duty

32. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

33. Defendants were appointed to the PCC to act as an agent for the Estate and its unsecured creditors both before confirmation of the Plan of Reorganization and during the administration and liquidation of Estate assets.

34. Defendants and other committee members owed the Estate and its unsecured creditors a fiduciary duty of undivided loyalty and care in managing the affairs of the PCC. Despite the fiduciary duty, at all times the Defendants maintained loyalty only to themselves and other committee members and third parties with whom he acted in concert to promote their own personal interests rather than those of the Estate and its unsecured creditors. Further, Defendants breached fiduciary duties of care by knowingly and intentionally acting with disregard for the Estate's ultimate return, and Defendants misappropriated material and nonpublic information concerning Estate assets which Defendants received in the capacity of a fiduciary.

35. Defendants' acts and omissions in breach of fiduciary duties have caused, and continue to cause, Plaintiff and the Estate to incur damage in an amount to be proven at trial.

36. Further, Plaintiff is entitled to a discretionary award of attorneys' fees for prosecuting this breach of fiduciary duty claim for the common benefit of the Estate and all unsecured creditors.

### Third Cause of Action – Civil Conspiracy

37. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

38. Defendants and all other PCC members are bound to exercise appropriate business judgment and owe fiduciary duties of undivided loyalty and care to the Bankruptcy Estate and its unsecured creditors, including Plaintiff. Such obligations prevent, among other things, disclosure to third parties of material information obtained in the capacity of a fiduciary, and the utilization of such information for personal benefit, rather for the benefit of the Estate and to maximize its ultimate recovery.

39. Notwithstanding, Defendants engaged in a concerted scheme, and further, formed a conspiracy with other PCC members as well as third parties, for the wrongful purpose of revealing and utilizing material nonpublic information concerning Estate assets in order to influence decisions of The Stapleton Group and PCC and achieve the ultimate objective of reducing asset values such that profits thereon would be realized personally by the conspirators and outside the bankruptcy.

40. As a direct and proximate result of the Defendants' wrongful and intentional acts, Plaintiff and the Estate have been, and continue to be, injured, harmed and damaged.

### Fourth Cause of Action – Fraud

41. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

42. Fiduciaries, such as Defendants, cannot receive a transfer of or deal in Estate property. Even full disclosure, adequacy of consideration and absence of a secret profit are no defense to a claim of fraud. The prohibition is absolute in the public interest. It is established to protect the courts themselves from suspicion of chicanery and to protect the Estate and unsecured creditors from insider transactions by fiduciaries for less than maximum recovery.

43. Each Defendant acted as a fiduciary with respect to assets of the Estate. Defendants' conduct of knowingly and intentionally utilizing their positions as a fiduciary, as well as material and nonpublic information obtained in trust concerning Estate assets, in order to manipulate values for personal gain, constitutes fraud upon Plaintiff, the Estate and other unsecured creditors.

44. Defendants' trust relationship and continuing attempts to obtain Estate property alone compel an inference of fraud as a matter of law.

45. As a direct and proximate result of the Defendants' past and continuing fraud, Plaintiff and the Estate have been, and continue to be, injured, harmed and damaged.

**Fifth Cause of Action – Violation of 18 U.S.C. § 153**

46. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

47. Defendants have access to information, property or documents belonging to the Estate by virtue of PCC membership and participation in Estate administration.

48. Defendants prior and ongoing misappropriation of material information, property or documents concerning Estate administration and assets, and prior and ongoing

attempts to transfer and appropriate Estate assets for Defendant's own use, violates 11 U.S.C. § 153(a), causing damages in an amount to be proven at trial.

**Sixth Cause of Action – Violation of 18 U.S.C. § 157**

49. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

50. Defendants are using the bankruptcy process, their membership on the PCC, and the trust placed upon them in that role, to further a fraudulent scheme to appropriate assets of the Estate for themselves and their co-conspirators.

51. Such conduct is in violation of 11 U.S.C. § 157(3) and has caused, and continues to cause, damages in an amount to be proven at trial.

**Seventh Cause of Action – Violation of 11 U.S.C. § 1102**

52. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

53. The PCC and Defendants are required to provide access to information for creditors holding claims they represent, such as Plaintiff.

54. Defendants have consistently and repeatedly refused to provide Plaintiff and other unsecured creditors with access to requested information, including without limitation information concerning Defendants' dealings in Estate assets, and appraisals, marketing strategies, and other documents concerning the administration and ultimate disposition of Estate assets.

55. Defendants have concealed information from creditors in order to conceal their own self-dealing, violating both fiduciary duties owed by Defendants as a member of the PCC, as well as 11 U.S.C. § 1102(b)(3).

56. As a direct and proximate result of the Defendants' failure to disclose information requested by Plaintiff and other unsecured creditors, Plaintiff and the Estate have been, and continue to be, injured, harmed and damaged.

### Eighth Cause of Action – Violation of 18 U.S.C. § 1962(c)

57. Plaintiff hereby incorporates by reference paragraphs 1 through 27, inclusive of the Complaint all as though fully set forth herein and made a part hereof by incorporation.

58. At all times relevant to this Complaint, each Defendant was a "person" as defined by 18 U.S.C. § 1961(3).

59. At all times relevant to this Complaint, each Defendant engaged in the operation or management of the PCC, which is an enterprise as the term is defined under 18 U.S.C. § 1961(4), the activities of which affect interstate and foreign commerce.

60. At all times relevant to this Complaint, each Defendant conducted the affairs of the PCC through a pattern of racketeering activity alleged herein that was directed at the business and property of the Estate and its unsecured creditors, including Plaintiff.

61. The PCC: (i) is an ongoing association-in-fact with a decision-making framework and mechanism for controlling the association; (ii) has associated members with a common purpose that function as a continuing unit; and (iii) is separate and apart from the pattern of racketeering activity. Conduct of the PCC, as it relates to inappropriate administration of Estate assets, is directed by each Defendant and his/her conspirators.

62. Defendants and other PCC members have manipulated and continue to manipulate the PCC for the purpose of engaging in, concealing, and benefitting from their act of acquiring Estate assets. The predicate acts form a "pattern of racketeering activity."

COMPLAINT FOR DAMAGES - 13

63. The predicate acts, occurring since 2009, each constitute and involve: (i) mail fraud in violation of 18 U.S.C. § 1341; (ii) bankruptcy fraud in violation of 18 U.S.C. § 157; and/or (iii) common law fraud under state law.

64. As a direct and proximate result of the violations set forth above, Plaintiff and the Estate have been damaged in their business and property. The Defendant's violations of 18 U.S.C. § 1962(c) are the proximate cause of damages to be proven at trial. Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and recover herein treble damages on behalf of the Estate and herself, the costs of bringing this suit, prejudgment interest, and recoverable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. For damages in an amount to be proven at trial;

b. For punitive damages pursuant to California Civil Code § 3294;

c. For treble damages pursuant to 18 U.S.C. § 1964;

d. For Plaintiff's costs and attorneys' fees, including costs and attorneys' fees pursuant to 11 U.S.C. § 1964, and pursuant to the equitable common fund doctrine; and

e. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED: June 20, 2011          LAW OFFICES OF JON H. FREIS

_____
Jon H. Freis, Esq.
Attorney for Plaintiff

COMPLAINT FOR DAMAGES - 14